IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JODIE HILL #317-449
         Petitioner                    :

   v.                                                  :   CIVIL ACTION NO. RWT-10-1689

BOBBY P. SHEARIN, et al.,              :
         Respondents

## MEMORANDUM OPINION

Pending is Jodie Hill's Petition for Writ of Habeas Corpus (ECF No. 1), the State's Response and exhibits (ECF No. 7), and Hill's Reply. ECF No. 9. The Court finds no need for an evidentiary hearing, see Rule 8(a), Rules Governing Section 2254 Cases in the United States District Courts; see also 28 U.S.C. § 2254(e)(2), and for reasons stated below, will dismiss the Petition with prejudice and deny a certificate of appealability.

## Background

Hill was convicted by jury in the Circuit Court for Baltimore City of first-degree murder and carrying a concealed weapon, and thereafter sentenced to life imprisonment and a concurrent three-year sentence. At trial, the State produced several witnesses who on May 13, 2002, saw Hill and the victim, Dante Carter, engage in a confrontation during daylight hours in a busy neighborhood near the intersection of Darly and Germania Streets. Both men were armed. Carter was shot and killed. All witnesses identified Hill, who was known in the area, as the shooter. ECF No. 7, Exhibit 9 at 152-58, 168-81 and Exhibit 10, 12-13, 61-62, 111, 117-19.

On direct appeal, Hill argued that:

1. The court erred in denying his motion to dismiss the charges because he was not tried within 180 days pursuant to Maryland Rule 4-271 and thus suffered a violation of his constitutional right to a speedy trial; and

> 2. The trial court erred in allowing the State to introduce into evidence photographic arrays shown to three witnesses during the investigation when all witnesses testified at trial that they knew Hill prior to the incident.

Id., Exhibit 14 at 2. The Court of Special Appeals of Maryland rejected both claims of error in an unreported opinion issued January 26, 2006. Id., Exhibit 16. Hill's uncounseled request for further review was denied by the Court of Appeals of Maryland on May 12, 2006. Id., Exhibits 17 and 18. Hill did not seek certiorari review by the United States Supreme Court. ECF No. 1 at 3.

On June 12, 2007, Hill initiated state post-conviction proceedings in the Circuit Court for Baltimore City. ECF No. 7, Exhibits 1 and 19. The petition, as supplemented by counsel, proceeded to a hearing on the following claims:

> 1. Trial counsel was ineffective for
>    a. failing to object to Crystal Fenwick's testimony;
>    b. failing to file a motion for modification of sentence;
>    c. failing to properly advise Hill of his right to a speedy trial; and
>    d. presenting inconsistent theories in closing argument; and
>
> 2. The verdict was defective because the jurors were not individually polled.

Id., Exhibits 19-22. A hearing on the petition, at which Hill and trial defense counsel testified, was held on January 22, 2009. Id., Exhibit 22. On August 3, 2009, relief was denied. Id., Exhibit 23. Hill sought leave to appeal to the Court of Special Appeals alleging ineffective assistance of counsel based on counsel's (1) failure to object to Crystal Fenwick's testimony, (2) failure to file a motion for modification of sentence; and (3) presentation of inconsistent theories in closing argument. Id., Exhibit 24. Leave to appeal was denied in an unreported opinion filed on June 9, 2010.[1] Id., Exhibit 25.

In his Petition for federal habeas corpus relief, Hill argues that:

> 1. The trial court violated his constitutional right to a speedy trial; and

---

[1] The mandate issued on July 9, 2010. Id., Exhibit 25.

2. Trial counsel was ineffective for
   a. failing to object and move to strike certain testimony;
   b. failing to counsel Hill with respect to, and failing to file, a motion for modification of sentence; and
   c. presenting inconsistent theories in closing argument.

ECF No. 1 at 6.

## Threshold Issues

### Exhaustion of State Remedies

Under Rose v. Lundy, 455 U.S. 509 (1982), those seeking federal habeas corpus relief must exhaust each claim in state court. Exhaustion is achieved by seeking review of the claim in the highest available state court. See 28 U.S.C. §§ 2254(b)-(c); see also O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999); Gray v. Netherland, 518 U.S. 152, 162-63 (1996). In Maryland, this may be accomplished by proceeding with certain claims on direct appeal and with other claims by way of a post-conviction petition, followed by petitioning the Court of Special Appeals for leave to appeal. Hill no longer has any available state direct review or collateral review remedies available for the claims raised here. His claims will be considered exhausted for this federal habeas corpus review.

### Timeliness

Respondents do not contend - and the record does not show - that Hill's petition is time-barred.

## Standard of Review

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits:

1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision is "contrary to" Supreme Court precedent if "the state court applies a rule that contradicts the governing law set forth in our cases." Williams v. Taylor, 529 U.S. 362, 405 (2000); Renico v. Lett, ___ U.S. ___, 130 S.Ct. 1855, 1862 (2010).[2] Section 2254(d) also requires federal courts to give great deference to a state court's factual findings. See Lenz v. Washington, 444 F. 3d 295, 299 (4th Cir. 2006). Section 2254(e)(1) of the habeas statute provides that a determination of a factual issue made by a state court shall be presumed to be correct absent clear and convincing evidence to the contrary. The applicant has the burden of rebutting the presumption of correctness. A decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding. See Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Using this analysis, the Court now examines the substance of Hill's claims.

---

[2] Although § 2254(d) is a "highly deferential standard for evaluating state-court rulings," Lindh v. Murphy, 521 U.S. 320, 333, n.7 (1997), "which demands that state court decisions be given the benefit of the doubt," Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (per curium), a state court decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 at 412-413. A state court decision is based on an "unreasonable application" of clearly established federal law when "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409-410; see also Wiggins v. Smith, 539 U.S. 510, 520-21 (2003); Booth-el v. Nuth, 288 F.3d 571, 575 (4th Cir. 2002).

4

## Analysis

### Speedy Trial Violations

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy ... trial." U.S. Const. Amend VI, §1. Despite the breadth of the Amendment's language, some delay of trial is constitutionally permissible. See Doggett v. U.S. 505 U.S. 647, 651 (1992). In deciding whether Hill's Sixth Amendment right to a speedy trial was violated, four factors must be considered: the length of the delay, the reason for the delay, the timeliness of the assertion of the right, and the actual prejudice suffered as a result of the delay. See Barker v. Wingo, 407 U.S. 514, 532 (1972). In Barker, the Court cautioned that the right to a speedy trial was not absolute:

> We regard none of the four factors identified above (length of delay, reason for delay, defendant's assertion of his right, and prejudice to the defendant) as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. But, because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution.

Id. at 533 (footnote omitted). As to the reason for the delay in trial, the Court stated:

> [D]ifferent weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

Id. at 531.

Prejudicial effect of a delay includes oppressive pretrial incarceration, defendant's anxiety, and, most importantly, impairment of the ability to prepare a defense. See Moore v. Arizona, 414 U.S. 25 (1973).

> Between diligent prosecution and bad-faith delay, official negligence in bringing an accused to trial occupies the middle ground. While not compelling relief in every case where bad-faith delay would make relief virtually automatic, neither is negligence automatically tolerable simply because the accused cannot demonstrate exactly how it has prejudiced him.

Doggett, 505 U.S. at 656-657.

In analyzing Hall's speedy trial claim, the Court of Special Appeals recognized and applied the Barker v. Wingo factors and found as follows:

*Length of delay*

> The length of delay is measured from the date of arrest to the date of trial. Epps v. State, 276 Md. 96, 109 (1975). In the case before us, the delay was approximately 16 months. This delay is of constitutional dimension and requires an analysis of other factors.

*Reasons for the delay*

> Under this factor, different weights are assigned to different reasons for the delay. Barker, 407 U.S. at 531. For example, a deliberate attempt by the State to delay a trial will weigh heavily against the government. Id. A delay caused by negligence or overcrowded courts weighs less heavily against the government. Id. Finally, "a valid reason, such as a missing witness" justifies the delay. Id.

> Appellant was arrested on May 21, 2002. The first trial date was November 25, 2002. The circuit court found that the intervening time was consistent with the orderly administration of justice. The first trial date was postponed at the request of appellant, based on the fact that the State produced certain discovery materials on October 31. The court attributed the time from November 25 to February 18 to the State.

> The remaining postponements were due to bad weather, unavailability of the prosecutor or State's witnesses, or the unavailability of a judge or courtroom. The court weighed the time against the State, but not heavily because they were not deliberate or due to neglect.

*Assertion of the right*

A defendant's assertion of his right to speedy trial is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. Id. at 531-32. By contrast, the failure to assert the right will make it difficult for a defendant to prove he was denied a speedy trial. Id. at 532. Appellant asserted his right to a speedy trial, so this factor weighs in appellant's favor.

*Prejudice*

This fourth factor is designed to protect three interests of the defendant: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired. Id. Impairment of defense is the most serious form of prejudice. Id.; Wilson v. State, 148 Md. App. 601 639 (2002), cert. denied, 374 Md. 84 (2003). In asserting prejudice, appellant points to pretrial incarceration and anxiety. There is no argument that appellant's defense was impaired. Prejudice thus weighs in favor of appellant.

ECF No. 7, Exhibit 16 at 3-5. Applying the Barker v. Wingo factors, the Court of Special Appeals found that "[b]ased on…de novo constitutional appraisal of the relevant factors we conclude, as did the circuit court, that appellant's constitutional right to a speedy trial was not violated." Id., Exhibit 16 at 5. Hill contends that the State courts' findings that the weight of the four factors tipped in his favor is dispositive and establishes that the brief delay in bringing him to trial is unconstitutional. ECF No. 1 at 6. He further contends that the Court of Special Appeals ruling should not survive scrutiny under 28 U.S.C. § 2254(d) because the court did not describe the weight to be given to the first postponement of approximately fourteen weeks, which was due to the State's last-minute production of certain discovery information. ECF No. 9 at 2.

Hill was arrested on May 21, 2002, and trial commenced on September 12, 2003, nearly sixteen months later. The Court of Special Appeals found that Hill timely asserted his right to a speedy trial and that the initial delay was attributed to the State. That delay, however, resulted in

7

a new trial date of February 18, 2003 – slightly less than three months outside Maryland's 180-day deadline for commencing trial.[3] The appellate court found that all subsequent delays, while attributable to the State, were "not heavily weighted" because they were neither deliberate nor due to neglect. It then went on to find that while Hill expressed anxiety due to the delay, he did not suffer a "serious form of prejudice" as a result. Hill has failed to detail actual prejudice and thus has failed to provide clear and convincing evidence that the State courts' conclusions regarding prejudice were objectively unreasonable. Accordingly, relief shall not be granted on the basis of Hill's speedy trial claim pursuant to 28 U.S.C. § 2254(d).

### Ineffective Assistance of Trial Counsel

The right to effective assistance of counsel is protected by the Sixth Amendment. Constitutional ineffective assistance of counsel claims are governed by Strickland v. Washington, 466 U.S. 668 (1984).[4] To prevail on a claim of ineffective assistance of counsel, a petitioner must show his attorney's performance fell below an objective standard of reasonableness and that he suffered actual prejudice. Strickland, 466 U.S. at 687. To demonstrate actual prejudice, a petitioner must show there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Id. at 694. There exists a strong presumption that counsel's conduct was within a wide range of reasonably professional conduct, and courts must be highly deferential in scrutinizing counsel's

---

[3] The constitutionality of Maryland Rule 4-271 is outside the scope of federal habeas corpus review. The undersigned notes, however, that the Rule does not present an absolute deadline for the commencement of trial.
[4] The Court reaffirmed and applied these standards in an ineffective assistance of counsel context in Bell v. Cone, 535 U.S.685 (2002):

> For respondent to succeed, however, he must do more than show that he would have satisfied Strickland's test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly. [internal citation omitted]. Rather, he must show [the state court] applied Strickland to the facts of his case in an objectively unreasonable manner.

Id. at 698-9.

performance. Id. at 688-89. A petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). Furthermore, a determination need not be made concerning the attorney's performance if it is clear that no prejudice would have resulted had the attorney been deficient. Id. at 697. Using the Strickland standard, the Court reviews Hill's ineffective assistance claims.

Although not well delineated, it appears that Hill's first ineffective assistance claim mirrors the claim raised on post-conviction; namely, that trial counsel failed to object to testimony of State's witness Crystal Fenwick. The post-conviction court examined this claim and found as follows:

> (A) Petitioner argues that the trial testimony of eye-witness Crystal Fenwick was unduly prejudicial, non-responsive and irrelevant. Consequently, Assistant Public Defender, Jerome LaCorte's failure to object to Fenwick's testimony, move to strike her testimony, or seek a curative instruction, should constitute ineffective assistance of counsel.
>
> It is a valid trial tactic not to object where counsel knows that the objection might be overruled or aggravate the trial judge. *Beverley v. State*, 349, Md. 106 (1998). The tactical decisions of trial counsel bind the defendant. *Treece v. State*, 313 Md. 665 (1988). At the hearing, Mr. LaCorte testified that his decision not to object was part of his trial strategy, stating, 'less is more" when mounting objections at trial. Furthermore, LaCorte believed Fenwick's trial testimony to be relevant, that it bolstered Petitioner's claim of self defense and is was preferable to have the State elicit the evidence rather than have it brought out by the defense. Clearly, these reasons are tactical and point to legitimate strategy rather than ineffective assistance of counsel.

ECF No. 7, Exhibit 23 at 4-5.

Fenwick, a McDonald's manager who lived in the neighborhood where the crime occurred, testified for the State. According to her testimony, she had known the victim, Dante, by name for about six months. On the day of the shooting, Fenwick was returning from the store

9

and the victim was walking behind her. As Fenwick approached her home she saw Hill come "around the corner with the gun." ECF No. 7, Exhibit 10 at 166-17 and 118. Fenwick entered her doorway but "never really stepped up inside the door…because [her] 12 year old son…wasn't in the house" and "a lot of kids [were] outside" with "[e]verybody in the neighborhood…outside…sitting in chairs, kids…running around." Id, Exhibit 10 at 118. Fenwick then testified:

> I guess when I got out of the way Dante seen Jodie. Dante did not have his gun out. Jodie had his gun out and Dante did not show a gun because he was focusing on what Jodie was doing.
>
> At the time while they were running, circling the car, Dante then finally pulled out his gun. But when they started Dante did not have a gun showing at all. Jodie had already had his gun out when he turned the corner. Then everybody was still outside. No one ran. No one called the police. Nobody did anything. I didn't go in the house because I was still looking for my son and I was like standing there because I was, you know, I couldn't find my son and there was kids running all over the place.
>
> Jodie was like, Dante, you shoot, then Dante said, no, you shoot. After that all you heard Jodie say was no, fuck that, -- excuse me – and then he shot him. After he shot him he kicked him in his head. Then two ran across the street and took the gun out of Dante's hand and he left. The police didn't get there. Dante was on the ground. Everybody was screaming and it was like he was right there in front of my door.
>
> I don't know what happened or what caused it but he wasn't no problem to me or my kids. I didn't have a problem really with neither one of them at all. But anybody could have turned that corner. My son could have turned that corner and them not thinking they could have shot somebody's child or they could have shot my child in the process of them being out there with them guns….
> …
>
> The only thing is that Dante – nobody deserve to get shot. Nobody deserve to die the way that boy died in front of my house and on that block at all. He didn't deserve that at all. And to go through this and have his family go through this and I'm a mother so I know how it feels. It's just wrong….

ECF No. 7, Exhibit 10 at 118-120. Fenwick also testified that Hill "wasn't a bad person either" and the "only time his bad side [appeared was] when Dante was in his eyesight or he was in

Dante's eyesight….I've never seen him do any harm to nobody else." Id., Exhibit 10 at 121.

At post-conviction, Hill's counsel argued that trial counsel's failure to object to Fenwick's unsolicited, irrelevant, immaterial and unresponsive statements during direct testimony prejudiced Hill's argument that he acted in self-defense. Trial counsel Jerome LaCorte testified at the post-conviction hearing that the decision not to object to Fenwick's testimony had strategic underpinnings. Specifically, LaCorte testified that Fenwick actually fortified the defense position that the victim was the instigator of the confrontation because on the day in question she observed him threaten Hill with a gun. ECF No. 7, Exhibit 22 at 26-28, 36-38. In LaCorte's opinion, it was particularly beneficial to the defense to adduce this evidence through Fenwick because she was the State's witness. Id. LaCorte also testified that based on his experience, objections tend to alienate jurors. Id. LaCorte opinioned that under the circumstances of the case, the better strategy was not to object to Fenwick's testimony. Id. at 27-28.

The state post-conviction court credited LaCorte's testimony and concluded that the strategy employed was reasonable. On this record, the state court did not unreasonably apply *Strickland* in finding that counsel was not ineffective as alleged. Thus, relief pursuant to 28 U.S.C. § 2254(d) is unwarranted.

Hill next argues that trial counsel failed to file a motion for modification of sentence on his behalf. ECF No. 1 at 6. Assuming Hill had a right to counsel's assistance in filing such motion,[5] he has failed to demonstrate entitlement to relief under this claim.

At the post-conviction hearing, Hill recalled that he and defense counsel discussed post-judgment options, but he could not remember specifically asking defense counsel to file a motion

---

[5] A criminal defendant cannot complain about ineffective assistance if he has no constitutional right to counsel to pursue a request for discretionary relief. See Wainwright v. Torna, 455 U.S. 586, 586-88 (1982) (per curiam).

for modification of sentence; rather, he could recall only a discussion related to the filing of a motion for review before a three-judge panel. ECF No. 7, Exhibit 22 at 14-16. Trial counsel remembered that they discussed available post-judgment motions, and that he would have filed a motion for modification of sentence had Hill requested him to do so. Id. at 21-24, 31-32.

In rejecting Hill's claim of error, the state post-conviction court held:

> (B) Petitioner also claims ineffective assistance of counsel because defense counsel did not file a Motion for Modification of Sentence within the ninety days required by Maryland law. No evidence was presented during the hearing that Petitioner requested that defense counsel file a motion for modification of sentence. During his testimony, Mr. LaCorte stated that it is his standard practice to file a Motion for Modification of Sentence when requested to by a defendant, but if he is not asked, he will not file.
>
> Importantly, Petitioner did request and sign a Motion for Review of Sentence by a Three judge Panel; a request subsequently denied on March 29, 2004. Here it is reasonable to conclude that Petitioner did not ask his attorney to file a motion for modification of sentence because that is the stated practice of the attorney and no evidence has been presented that any request was made other than the Petitioner's request for a review of sentence by a three judge panel.

ECF No. 7, Exhibit 23 at 5. These findings, including credibility determinations, are supported by the record. Hill cannot substantiate his claim that trial counsel did not notify him of his right to seek sentence modification nor that counsel failed to file such motion upon request. Relief is hereby denied under 28 U.S.C. § 2254(d).

Hill's final claim alleges that trial counsel was ineffective for asserting inconsistent theories in closing argument. ECF No. 1 at 6. The state post-conviction found otherwise:

> Petitioner further alleges ineffective assistance of counsel at trial because during closing argument defense counsel argued that Petitioner was not the shooter, or, alternatively, acted in self-defense. At first blush, arguing both innocence and self-defense appears inconsistent. Either the defendant was the shooter or he was not, and to pursue both strategies appears contradictory.

> On the other hand, both arguments are complete defenses potentially resulting in a defendant's acquittal. Effectively arguing complete innocence is the most desirable outcome for any defendant in a criminal proceeding. No less effective, however, is successfully arguing that the defendant acted in self-defense because self-defense is an affirmative defense. Here defense counsel employed two reasonable theories for producing a verdict of not guilty. It is tactically feasible to argue to the jury that the State's evidence has failed to establish beyond a reasonable doubt that the defendant was either the shooter, or did not act in self defense because both arguments cast the defendant in a favorable light and place the burden of proof on the State where it belongs. Therefore, this allegation is also baseless.

ECF No. 7, Exhibit 23 at 6-7.

Trial counsel attacked the reliability of the state's witnesses and urged the jury to acquit Hill because the State had not proven its case beyond a reasonable doubt. ECF No. 7, Exhibit 12 at 37-56. In the alternative, counsel argued that if the jury found the State's witnesses credible, they should then find that Hill acted in self-defense. Id., Exhibit 12 at 56-60. The evidence presented at trial, including direct testimony and cross-examination, could have supported either inference; thus, delineating both theories in closing argument did not compromise Hill's defense. The post-conviction court's conclusion is objectively reasonable and survives scrutiny under 28 U.S.C. § 2254(d).

**Certificate of Appealability**

A habeas petitioner has no absolute entitlement to appeal a district court's denial of his motion. See 28 U.S.C. § 2253(c) (1). "A [Certificate of Appealability, or "COA"] may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at §2253(c) (2). The petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282, (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484, (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,' " Miller-El v. Cockrell,

537 U.S. 322, 335-36, (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n. 4 (1983)). The Court will not issue a certificate of appealability because Hill has not made the requisite showing.

The Petition is denied and dismissed. A separate Order follows.

Date: <u>June 8, 2011</u>                                                       <u>          /s/          </u>
                                                                                                ROGER W. TITUS
                                                                                    UNITED STATES DISTRICT JUDGE